1

2

3

4

5

6

7

8 **UNITED STATES DISTRICT COURT**

9 EASTERN DISTRICT OF CALIFORNIA

10

| | |
|---|---|
| 11  JOHN EDWARD MITCHELL,          ) | Case No.: 1:11-cv-01250 JLT (PC) |
| 12                    Plaintiff,          ) | ORDER REQUIRING PLAINTIFF TO |
| | NOTIFY THE COURT OF HIS |
| 13        v.                             ) | WILLINGNESS TO PROCEED ON HIS |
| | COGNIZABLE CLAIMS OR FILE A |
| 14  M. CATE, et al.,                     ) | SECOND AMENDED COMPLAINT |
| 15                    Defendants.          ) | (Doc. 11) |

16

17          Plaintiff, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action

18   pursuant to 42 U.S.C. § 1983 on July 21, 2011.  Before the Court is Plaintiff's first amended

19   complaint filed on November 21, 2011.  (Doc. 11)

20   **I.     SCREENING REQUIREMENT**

21          The Court is required to review a case in which a prisoner seeks redress from a governmental

22   entity or officer.  28 U.S.C. § 1915A(a).  The Court must review the complaint and dismiss any

23   portion thereof that is frivolous or malicious, fails to state a claim on which relief may be granted,

24   or seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. § 1915A(b).

25   If the Court determines the complaint fails to state a claim, leave to amend should be granted to the

26   extent that the deficiencies in the pleading can be cured by amendment.  Lopez v. Smith, 203 F.3d

27   1122, 1127-28 (9th Cir. 2000) (en banc).

28          The Civil Rights Act under which this action was filed provides a cause of action against any

1

"person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws [of the United States.]" 42 U.S.C. § 1983. To prove a violation of § 1983, a plaintiff must establish that (1) the defendant deprived him of a constitutional or federal right, and (2) the defendant acted under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Collins v. Womancare, 878 F.2d 1145, 1147 (9th Cir. 1989). "A person deprives another of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains]." Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1993) (quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978)). In other words, there must be an actual causal connection between the actions of each defendant and the alleged deprivation. See Rizzo v. Goode, 423 U.S. 362, 370-71 (1976).

"Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Nevertheless, a plaintiff's obligation to provide the grounds of entitlement to relief under Rule 8(a)(2) requires more than "naked assertions," "labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action." Twombly, 550 U.S. at 555-57. The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868, 883 (2009) (quoting Twombly, 550 U.S. at 570). Vague and conclusory allegations are insufficient to state a claim. See Ivey v. Board of Regents, 673 F.2d 266, 268 (9th Cir. 1982).

## II. THE COMPLAINT

Plaintiff is a state prisoner who is a "sincere Muslim." (Doc. 11 at 5) Plaintiff alleges that while he was housed at Solano State Prison, from 2005 through 2007, he was given a religious diet chrono to provide him a Halal meal. Id. Plaintiff was transferred to CSP-Corcoran on October 25, 2009 and soon thereafter, requested a copy of his religious diet chrono so he could receive Halal

meals at Corcoran.  (Doc. 11 at 5) The counselor told him that he had to write to the Muslim chaplain to be placed on the religious diet.  Id.  Plaintiff wrote to the chaplain but did not receive a response and did not receive a copy of his previously issued diet chrono from his counselor.  Id.

On August 7, 2010, Plaintiff made additional requests to receive religious meals given the approach of Ramadan, which was due to begin on August 11, 2010.  (Doc. 11 at 5) Because there was no Imam at Corcoran, Plaintiff was told to write to Chaplain, R. Indermill about receiving the religious diet.  Id.  He wrote to R. Indermill on August 8, 2010 and received a "CDCR 30/30 religious diet request form" which he completed and returned via institutional mail on the same day. Id.  On August 11, 2010, Plaintiff's psychologist told Plaintiff that he would be put on the list to receive the appropriate religious meals during the period of Ramadan. Id.  Nevertheless, on this first day of Ramadan, he was served "regular non Halal foods." Id. at 6.  When he still had not received the religious meal by August 12, 2010, Plaintiff again submitted a request to R. Indermill and a few days later, received another blank  "CDCR 30/30 religious diet request form" and he again returned this form on the same date it was received.  Id.  Throughout the entire period of Ramadan, Plaintiff was not provided a Halal meal though on one day he was provided a vegetarian meal.  Id.

On August 23, 2010, Plaintiff filed a 602 grievance but, when he did not receive a response, he filed another one on October 20, 2010 and on November 8, 2010.  (Doc. 11 at 6-7) The first two, Plaintiff sent to T. Cano, the appeals coordinator but he sent the final one to the warden, R. Lopez. Id.  On November 21, 2012, Plaintiff alleges he sent another "CDCR 30/30 religious diet request form" but this time sent it to the Native American spiritual advisor, B. Albitre. (Doc. 11 at 7) On December 8, 2010, B. Albitre interviewed Plaintiff and told him that he had to fill out a "CDCR 30/30 religious diet request form." Id.  Nevertheless, the religious meal request–dated August 10, 2010– was approved by B. Albitre on December 9, 2010.[1]  (Doc. 1 at 27-29)

///

///

---

[1]Plaintiff refers to attachments to his first amended complaint but fails to provide any attachments. However, the Court has referred to the attachments to the original complaint.  If Plaintiff chooses to file a second amended complaint, he will need to include these documents with it, if he still wishes them to be attachments.

1    **III.     DISCUSSION**

2           **A.     Interference with the practice of Plaintiff's religion**

3           Plaintiff raises his claims under the First Amendment and under the Religious Land Use and

4    Institutionalized Persons Act ("RLUIPA"). 42 U.S.C. § 2000cc-1.

5           "Inmates clearly retain protections afforded by the First Amendment . . . including its

6    directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482

7    U.S. 342, 348 (1987) (citations omitted).   However, "[l]awful incarceration brings about the

8    necessary withdrawal or limitation of many privileges and rights, a retraction justified by the

9    considerations underlying our penal system." Id. (citation and internal quotation marks omitted).

10   A prison regulation may therefore impinge upon an inmate's right to exercise his religion if the

11   regulation is "reasonably related to legitimate penological interests." Shakur v. Schriro, 514 F.3d

12   878, 884 (9th Cir. 2008) (citations omitted).

13          In Turner v. Safley, 482 U.S. 78, 89-96 (1987), the Supreme Court provided four factors that

14   a court must consider to determine if a regulation is reasonable: (1) the existence of a valid, rational

15   connection between the prison regulation and the legitimate government interest asserted to justify

16   the regulation; (2) whether the inmate has alternative available means of exercising the allegedly

17   infringed right; (3) the impact of accommodating the asserted constitutional right on other inmates,

18   prison officials, and prison resources; and, (4) the absence or availability of ready alternatives to the

19   regulation, even though the state need not show that the regulation is not the least restrictive means

20   of achieving their stated policy goals. Id. at 89-90. The prisoner asserting that his rights have been

21   infringed has the burden of proving that the challenged prison regulation is not valid. Overton v.

22   Bazzetta, 539 U.S. 126, 132, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003).

23          A prisoner's ability to freely exercise his religion is also protected by the RLUIPA.  42

24   U.S.C. § 2000cc-1.  Under RLUIPA, prison officials are prohibited from imposing "substantial

25   burdens" on religious exercise unless there exists a compelling governmental interest and the burden

26   is the least restrictive means of satisfying that interest.  Alvarez v. Hill, 518 F.3d 1152, 1156 (9th

27   Cir. 2008) (citing Warsoldier v. Woodford, 418 F.3d 989, 994 (9th Cir. 2005)).  For the purposes

28   of RLUIPA, a "substantial burden" is one that imposes a "significantly great restriction or onus"

1   upon a prisoner's exercise of religion.  Warsoldier, 418 F.3d at 995 (citation omitted).

2       Here, it appears that Plaintiff repeatedly requested that he be provided a religious meal.

3   (Doc. 11 at 5-7)  Repeatedly he was told to fill out forms–indeed, the same form–and he did so.  Id.

4   Nevertheless, he was not provided a Halal meal during the entire time he was housed at CSP-

5   Corcoran, though he was provided a vegetarian meal one time.  Id.

6       However, Plaintiff fails to link the denial of the Halal meals to most of the named

7   Defendants.  Though he reports that he sent his 602 grievances to T. Cano and Warden Lopez, to the

8   extent that Plaintiff alleges that prison officials ignored his inmate grievances, he is advised that it

9   is well-established that "inmates lack a separate constitutional entitlement to a specific prison

10  grievance procedure."  Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (citing Mann v. Adams,

11  855 F.2d 639, 640 (9th Cir. 1988)).  Therefore, when a prison official denies, screens-out, or ignores

12  an inmate's grievance, the prison official does not deprive the inmate of any constitutional right.

13  See, e.g., Wright v. Shannon, No. CIV F-05-1485 LJO YNP PC, 2010 WL 445203, at *5 (E.D. Cal.

14  Feb. 2, 2010) (plaintiff's allegation that prison officials denied or ignored his inmate appeals failed

15  to state a cognizable claim); Walker v. Vazquez, No. CIV F-09-0931 YNP PC, 2009 WL 5088788,

16  at *6-7 (E.D. Cal. Dec. 17, 2009) (plaintiff's allegation that prison officials failed to timely process

17  his inmate appeals failed to state a cognizable claim); Towner v. Knowles, No. CIV S-08-2833 LKK

18  EFB P, 2009 WL 4281999, at *2 (E.D. Cal. Nov. 20, 2009) (plaintiff's allegation that prison officials

19  screened-out his inmate grievances without any basis failed to show a deprivation of federal rights).

20  A plaintiff cannot hold prison officials liable merely for involvement in a prison appeals process.

21  Mann v. Adams, 855 F.2d 639, 640 (9th Cir. 1988).

22      On the other hand, the mere fact that Plaintiff mailed Warden Lopez a copy of his

23  administrative appeal is not sufficient to link him to the denial of the meals.  Notably, within one

24  month of sending this appeal to Lopez, he had been granted the religious meal.  (Doc. 1 at 27-29)

25  Similarly, the only act attributed to Defendant Cate is that in a different litigation involving different

26  issues, Plaintiff filed a motion for preliminary injunction–in which he made a limited reference to

27  the denial of religious meals–and also mailed a copy of this motion to Defendant Cate.  (Mitchell

28  v. Schwarzenegger, Case. No. 2:09-cv-03012 KJN (PC), Doc. 26 at 3) In relevant part, this motion

reads,

> Plaintiff is a Muslim and did participate in the Ramadan program.  He has before and since Ramadan been denied and or ignored as to all of his request for the religious diet (Halal meats).  The plaintiff went as far as hunger strikes but they were ignored so he ended ended up on suicide watch due to the stress.  He appealed and that to [sic] has gone ignored.

However, the gist of this motion–which is approximately 18 pages long including exhibits, is that Plaintiff was suffering retaliation and harassment by staff.

Likewise, Plaintiff sent the dietary request to Albitre on November 21, 2010–which was the Sunday before the Thanksgiving holidays–and Albitre promptly met with him thereafter.  (Doc. 1 at 27-29)  Within one day of this meeting, Albitre had approved the religious diet and gathered the necessary signed documents from Plaintiff to allow the meals to be provided.  Id.  This simply does not demonstrate a substantial burden on Plaintiff's practice of his religion.

Finally, though Plaintiff alleges that Defendant M. Smith was responsible for determining all requests for religious meals (Doc. 11 at 3), there are no facts alleged that Smith took any wrongful action.  Moreover, as just discussed, despite the claim that Smith made the religious meal determinations, the documentation from Plaintiff's approved request makes clear that it was Albitre–not Smith--who signed the approval of the request. (Doc. 1 at 29)  At most, Smith–along with Albitre– signed the letter to Plaintiff telling him that his request for religious meals was approved. (Doc. 1 at 27)

On the other hand, as to Defendants Pena, Sumaya and Indermill, Plaintiff has stated a claim against these Defendants for violations of the First Amendment and under RLUIPA.  As to Indermill, twice Plaintiff made written request for the religious meal and twice Indermill asked him to submit the same form that he had already submitted.  (Doc. 11 at 5-6)  Moreover, as to Pena and Sumaya, though staff members told that they had no control over whether Plaintiff could receive a religious meal, when Officer Flores was made aware of the situation, this officer was able to obtain for Plaintiff a vegetarian meal.[2]  (Doc. 11 at 6)  Thus, at this stage, when the Court must interpret the

---

[2]Though a vegetarian meal does not provide meat that is butchered correctly such to satisfy Halal requirements, Plaintiff agreed that eating a vegetarian meal plan would be sufficient to satisfy his religious needs. (Doc. 1 at 29)

complaint in Plaintiff's favor, it appears Plaintiff has stated a claim against Defendants Pena, Sumaya and Indermill.

### F.    Leave to Amend

In sum, Plaintiff's complaint states the following cognizable claims for violations of the First Amendment and RLUIPA against Defendants Pena, Sumaya and Indermill.  Plaintiff's remaining allegations fail to state a cognizable claim.

Plaintiff may therefore proceed in one of two ways.  First, Plaintiff may elect to serve his complaint and pursue only claims against Defendants Pena, Sumaya and Indermill.  Second, Plaintiff may delay service and file a second amended complaint, attempting to cure the deficiencies that have been identified by the Court in this order.  See Noll v. Carlson, 809 F.2d 1446, 1448 (9th Cir. 1987) ("A pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.") (internal quotation marks and citation omitted).

If Plaintiff elects to file a second amended complaint, he is warned that he may not change the nature of this suit by adding new and unrelated claims.  See George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (no "buckshot" complaints).  In addition, Plaintiff is advised that once he files an amended complaint, his original pleadings are superceded and no longer serve any function in the case.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).  **Thus, the amended complaint must be "complete in itself without reference to the prior or superceded pleading."**  Local Rule 220.

## IV.    CONCLUSION

In accordance with the above, it is **HEREBY ORDERED** that:

1.    Within thirty (30) days from the date of service of this order, Plaintiff shall either:

    a.    Notify the Court in writing that he wishes to proceed only on those claims found cognizable by the Court in this order; or

    b.    File a second amended complaint attempting to cure the deficiencies identified by the Court in this order.

2.    The Clerk of the Court is directed to send Plaintiff the form complaint for use in a civil rights action; and

3.      **Plaintiff is warned that failure to comply with this order will result in a recommendation that this case be dismissed.**

IT IS SO ORDERED.

Dated:    **April 6, 2012**                    **/s/ Jennifer L. Thurston**
                                           UNITED STATES MAGISTRATE JUDGE